**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MANUEL JOHNSON,** | |
| *Plaintiff,* | **CIVIL ACTION** |
| **v.** | **NO. 15-01310** |
| **DELAWARE COUNTY COMMUNITY COLLEGE,** | |
| *Defendant.* | |

**PAPPERT, J.**                                                              **DECEMBER 9, 2015**

<u>MEMORANDUM</u>

Plaintiff Manuel Johnson ("Johnson") sued his former employer, Delaware County Community College ("the College"), for violations of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Before the Court is the College's Motion to Dismiss Johnson's Complaint. (ECF No. 4.) For the reasons that follow, the motion is granted in part and denied in part.

**I.**

In October 2000, the College hired Johnson for a custodial position in the Plans Operations Department. (Compl. ¶¶ 14–15, ECF No. 1.) As part of his job, Johnson was assigned physically demanding tasks such as walking, climbing stairs and ladders, bending, kneeling and squatting. (*Id.* ¶ 16.) Around October 2013, Johnson suffered an injury to his right knee and was diagnosed with a torn meniscus.[1] (*Id.* ¶ 21.) Johnson informed the College of his inability to work due to his injury, and submitted notes from his physician, Dr. Maziar Shirazi,

---

[1] A torn meniscus is a tear of one of the two pieces of C-shaped cartilage that cushion the gap between the shinbone and the thighbone. The tear causes pain, swelling, stiffness and difficulty extending the knee fully. Although the injury can heal on its own with conservative treatment, sometimes it requires surgical repair. Mayo Clinic Staff, *Torn Meniscus* http://www.mayoclinic.org/diseases-conditions/torn-meniscus/basics/definition/con-20029237 (last visited December 9th, 2015).

M.D. ("Dr. Shirazi"), excusing him from work one week at a time.  (*Id.* ¶¶ 22–23.)  On

November 7, 2013, Johnson submitted a note from Dr. Shirazi which advised that Johnson was

unable to perform work duties requiring him to walk or run and that further evaluation was

needed before he could return to work.  (*Id.* ¶ 24.)

On November 12, 2013, Human Resources Director Christopher Dickerman

("Dickerman") sent Johnson a letter ("the Dickerman Letter") offering him FMLA leave.  (*Id.* ¶

25, Ex. A; Def.'s Mot. Dismiss at Ex. 1, ECF No. 4.)  Attached to the Dickerman Letter was a

Department of Labor Form ("DOL Form") entitled "Employee Rights and Responsibilities under

the Family Medical Leave Act."  (Def.'s Mot. Dis. at Ex. 1.)  Also attached was a Health Care

Provider Certification Form ("the Certification").  (*Id.*)  The Dickerman Letter stated, in relevant

part:

> I was recently given a doctor's note indicating you would be out for an
> undetermined period of time.  You are entitled to 12 weeks leave under the
> Family Medical Leave Act.  I am enclosing an FMLA medical Certification form
> for you to give your doctor to complete . . . I am placing you on FMLA Leave
> pending receipt of the form [sic] your doctor.  It appears that you have enough
> sick time to cover you through 12 full weeks.  If you cannot return at the end of
> the 12 weeks I will send you information on the Long Term Disability policy the
> College provides.

(*Id.*; Compl. at Ex. A.)  The Certification listed Johnson's essential job functions, which

included: (1) care of composition floor tile and quarry tile; (2) carpet cleaning; (3) hot water

extraction; (4) office, classroom and restroom cleaning; (5) window washing; and (6) floor

refinishing.  (Def.'s Mot. Dis. at Ex. 1.)  On November 22, 2013, Johnson returned the

Certification form, completed by Dr. Shirazi.  (Compl. ¶¶ 28–29.)  Dr. Shirazi estimated that

Johnson could return to work on February 1, 2014.  (*Id.* ¶ 29.)

Aside from the Dickerman Letter and accompanying documents, Johnson never received

any documentation regarding the parameters of his FMLA leave.  (*Id.* ¶ 33.)  The College's Full-

Time Support Staff Handbook states that "Human Resources will monitor the continued medical absence of an employee and will supply the employee with the necessary disability application forms in advance of the anticipated date of extended disability along with appropriate instructions for attending physician statements, etc." (*Id*. at Ex. B.)  However, Johnson never received an approval notice, a description of how his leave would be calculated, or any notification of a change in his designation. (*Id*. ¶ 33.)  No one from the College contacted Johnson to discuss the status of his condition until February 2014. (*See generally* Compl.)

Johnson's condition deteriorated and Dr. Shirazi determined that he required surgery and additional recovery time. (*Id*. ¶ 35.)  Surgery was scheduled for March 4, 2014. (*Id*.)  Johnson failed to tell the College about his deteriorating condition or his upcoming surgery and recovery period. (*See generally* Compl.)  Johnson alleges that he intended to return to work after his recovery and did not need an undetermined period of extended leave. (*Id*. ¶ 36.)  He further contends that "allowing [him] to take a brief extension of medical leave . . . would have given [him] the time he needed to fully recover to return to work in a reasonable amount of time." (*Id*. ¶ 54.)  Johnson did not return to work by February 1, 2014 as Dr. Shirazi had estimated on the Certification. (*See generally* Compl.)  On February 10, 2014, the College terminated Johnson for abandoning his job. (*Id*. ¶ 37.)  The College also informed Johnson that his medical insurance would terminate on February 28, 2014. (*Id*. ¶ 38.)  At no point before his termination did Johnson tell the College about his upcoming surgery or recovery plans. (*See generally* Compl.)

On February 25, 2014—fifteen days after receiving the termination letter—Johnson emailed Dickerman asking him to reconsider the termination and extend his leave for a brief period of time until he underwent surgery and recovered. (*Id*. ¶ 41–42.)  Dickerman told Johnson, "[y]our supervisors asked for the termination based on you not coming back to work

3

and I concurred." (*Id.* ¶ 43.)  Johnson submitted an updated physician's note on February 27, 2014, in which Dr. Shirazi informed the College that Johnson's knee surgery was scheduled for March 4 and that he required physical therapy before he could return to work. (*Id.* ¶ 44.)  This was the first time Johnson had told the College about his surgery and desire for additional leave. (*See generally* Compl.)  The College nonetheless reaffirmed its decision. (*Id.* ¶ 45.)

Johnson filed his complaint on March 13, 2015, alleging: (1) discrimination and retaliation under the ADA (Count I); and (2) interference and retaliation under the FMLA (Count II). (ECF No. 1.)  The College filed its motion to dismiss on May 26, 2015. (ECF No. 4.) Johnson filed his response on June 9, 2015 (ECF No. 7.), and the College filed its reply on June 17, 2015. (ECF No. 8.)  The Court heard oral argument on the motion on November 24, 2015.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. (quotation and citation omitted).  Speculative and conclusory statements are not enough.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Furthermore, the court must construe the complaint in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)).  However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

Finally, a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

## III.

Count I of Johnson's complaint alleges claims of discrimination and retaliation under the ADA.  Johnson contends that the College discriminated against him by failing to reasonably accommodate his disability.  (Compl. ¶¶ 55–57.)  Johnson also alleges that after he requested a brief extension of leave, the College retaliated by terminating him.  (*Id*. ¶¶ 58–59.)

### *ADA Discrimination – Failure to Accommodate*

In order to establish a *prima facie* case of discrimination for failure to accommodate under the ADA, Johnson must establish: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.  *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004).

i.      *Disability*

Johnson must first demonstrate that he is disabled within the meaning of the ADA. The Act defines a disability as either: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual ["actual disability"]; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* at 762 (citing 42 U.S.C. § 12102(2)). Johnson alleges that he is disabled under all three prongs.

Johnson first contends that he suffered from an actual disability. "The determination of whether an individual is substantially limited in a major life activity must be made 'on a case-by-case basis.'" *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)). "What matters is not the name or diagnosis of the impairment but 'the effect of the impairment on the life of the individual.'" *Id.* "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "Nonetheless, not every impairment will constitute a disability" within the meaning of the statute. *Id.* Qualifying major life activities include, among other things, walking, standing, sitting, reaching, lifting and bending. 29 C.F.R. § 1630.2(i)(1)(i); *see also* 42 U.S.C. § 12102(2)(A).

Through the ADA's amendments, Congress mandated that the term "disability" should be "construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). Therefore, "courts must interpret the term 'substantially limits' consistently with the liberalized purposes of the ADA [as amended]." *Matthews*, 613 F. App'x at 167 (citing 42 U.S.C. § 12102(4)(B)). Short-term impairments "lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix). For example, "if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially

limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." 29 C.F.R. § 1630.2(j)(1)(ix)(App.). Indeed, a musculoskeletal disorder or condition can be a qualifying physical impairment, provided it substantially limits a major life activity. 29 C.F.R. § 1630.2(h)(1).

In order for Johnson to successfully plead that he suffered from an actual disability, he must allege "the degree of limitation caused by the impairment and the nature of the alleged impairment at the time of his termination." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012). Although Johnson need not "go into particulars about the life activity affected by [his] alleged disability," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009), he must show that the impairment created an "important" limitation. *Koller*, 850 F. Supp. 2d. at 512 (internal citations omitted).

Johnson has sufficiently alleged an actual disability. Specifically, he alleges that his torn meniscus "substantially restricted his ability to walk [and] run." (Compl. ¶ 49.) Additionally, Dr. Shirazi notified the College on November 7, 2013 that Johnson was "unable to perform work duties requiring him to walk or run." (*Id*. at ¶ 24.) Moreover, at the time of his termination, Johnson's "condition [had] deteriorated." (*Id*. at ¶ 35.) Because the Court is "bound to take all factual allegations as true and make all reasonable inferences in [Johnson's] favor," the Court finds that he has sufficiently alleged an actual disability under the ADA.[2] *Matthews*, 613 F. App'x at 168.

---

[2]     Johnson also alleges that the College regarded him as disabled. (Compl. ¶ 51.) In order to establish that the College regarded him as disabled, Johnson must show that he was "subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(I)(1).
        Johnson contends—in a footnote—that the College regarded him as disabled because it believed his knee injury rendered him substantially limited in his major life activities. (Pl.'s Resp. at 14 n.1.) In support, Johnson points to the portion of the Dickerman Letter which stated: "If you cannot return at the end of the 12 weeks I will send you information on the Long Term Disability policy the College provides." (Def.'s Mot. Dis. at Ex. 1; Compl. at Ex. A.) Johnson's argument fails to distinguish between entitlement to FMLA leave and protection under the

ii.     *Qualified*

Johnson must also establish that he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations.  "[W]hether a particular function is essential is a factual determination that must be made on a case by case basis based upon all relevant evidence."  *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998).  Evidence of whether a function is essential can include the employer's judgment as to which functions are essential.  29 C.F.R. § 1630.2(n)(3)(i).

The Certification provided by the College listed Johnson's essential job functions, which included: (1) care of composition floor tile and quarry tile; (2) carpet cleaning; (3) hot water extraction; (4) office, classroom and restroom cleaning; (5) window washing; and (6) floor refinishing.  (Def.'s Mot. Dis. at Ex. 1.)  Johnson alleges that these duties required walking, climbing stairs and ladders, bending, kneeling and squatting—which the College does not dispute.  (Compl. ¶ 16; *see generally* Def.'s Mot. Dis.)

Johnson contends that Dr. Shirazi informed the College that he required further evaluation before he could return to his full work activities.  (Compl. ¶ 24.)  Additionally,

---

ADA.  Although the College implicitly acknowledged that Johnson's torn meniscus was a "serious health condition" by granting him FMLA leave, the College did not necessarily admit that it regarded him as disabled.  29 C.F.R. § 825.702(b) ("[The] ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately.").  Further, Johnson's argument misconstrues the Dickerman Letter, in which Dickerman does not tell Johnson that he *was* eligible for long-term disability, but rather states that *if* Johnson cannot return after 12 weeks, Dickerman would send information on the College's long-term disability policy.  Johnson therefore fails to show that the College regarded him as having a disability.

Johnson also contends that he had a record of disability.  (Compl. ¶ 51.)  In support, he argues that his medical documentation regarding his knee injury establishes such a record.  (Pl.'s Resp. at 14 n.1.)  To establish a record of disability, Johnson must show that he had a "history of, or [had] been misclassified as having, an impairment that substantially limited a major life activity."  *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 437 (3d Cir. 2009) (internal citations omitted).  Johnson must also "provide evidence that [the College] relied upon [his] record of impairment in making its employment decision."  *Id*.  Johnson fails to allege any facts establishing that his medical records constitute a *history* of an impairment that substantially limited a major life activity.  He merely alleges that his doctor provided notes excusing him from work in early October, and one note in November saying that he would be out of work pending further evaluation.  (Compl. ¶¶ 22–24.)  All of Johnson's notes stem from one knee injury.  Additionally, he fails to establish how his alleged disability presented in those notes played any part in the College's decision to terminate him.  Johnson thus also fails to show that he had a record of disability.

Johnson alleges that he ultimately required surgery and physical therapy before he could return. (*Id*. ¶¶ 41, 44.)  As a result, Johnson contends that "allowing [him] to take a brief extension of medical leave . . . would have given [him] the time he needed to fully recover to return to work in a reasonable amount of time."  (*Id*. ¶ 54.)  Johnson has therefore sufficiently alleged that he would have been able to perform the essential functions of his job after taking a brief period of additional leave to undergo surgery and physical therapy.

The issue then becomes whether a brief extension of leave was a reasonable accommodation.  Generally, an accommodation is reasonable if it does not impose an undue hardship on the employer's business.  42 U.S.C. § 12111(10)(A).  An accommodation does not impose an undue hardship unless it requires "significant difficulty or expense" on the part of the employer.  29 C.F.R. § 1630.2(p)(1).  Ultimately, "whether a proposed accommodation is reasonable is a question of fact."  *Williams*, 380 F.3d at 771 (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002)).  A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA.  *See Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010) (citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir.2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned . . . that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future.").  However, a request for an indefinite leave of absence is not a reasonable accommodation.  *See Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 586 (3d Cir. 2004).  Johnson did not request an indefinite leave, and therefore has sufficiently alleged that he could perform the essential functions of his job with a reasonable accommodation.

iii.     *Adverse Action*

Finally, Johnson must establish that he suffered an adverse employment action.  "Failure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination under the ADA."  *Williams*, 380 F.3d at 771.  The Third Circuit has "repeatedly held that an employer has a duty under the ADA to engage in an 'interactive process' of communication with an employee requesting an accommodation so that the employer will be able to ascertain whether there is in fact a disability and, if so, the extent thereof, and thereafter be able to assist in identifying reasonable accommodations where appropriate."  *Id*.  To establish that the College failed to engage in the interactive process, Johnson must demonstrate: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999).

The College argues that it had no duty to engage in the interactive process because it "only knew vaguely that Johnson was experiencing knee problems."  (Def.'s Mot. Dis. at 20.) Additionally, the College contends that it had no duty because it did not know of Johnson's request for accommodation until after he was terminated.  (Def.'s Reply at 12, ECF No. 8.)  The College misunderstands its duty.  Generally, the employer must have enough information to know of "both the disability and desire for an accommodation."  *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (citing *Taylor*, 184 F.3d at 313).  However, an employer is said to know of an employee's disability and his desire for an accommodation where "circumstances . . . [are] sufficient to cause a reasonable employer to make appropriate inquiries

about the possible need for an accommodation." *Conneen MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003); *see also Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 623 (E.D. Pa. 2012) (finding it "implausible" that that the employer did not know of the employee's disability where the employee, among other things, took FMLA leave). Indeed, "[t]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation and circumstances will sometimes require the employer to meet the employee half-way." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506–07 (3d Cir. 2010) (citing *Conneen*, 334 F.3d at 332)). The interactive process itself "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

While Johnson did not formally request an accommodation until after his termination, circumstances indicated that the College knew of Johnson's disability and his desire for accommodation before it terminated him. Johnson alleges that he provided the College with physician's notes detailing his injury and a Certification in which Dr. Shirazi provided specific information about his condition. (Compl. ¶¶ 23–24, 44.) Indeed, Dr. Shirazi had to complete the Certification because the College determined that Johnson's health condition was serious enough to qualify him for FMLA leave. (Def.'s Mot. Dis. at Ex. 1.) Johnson's failure to utter the "magic words" does not mean the College had no notice of his medical condition. Under these circumstances, the College should have met Johnson half-way to determine what limitations he had and what accommodations could help. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506–07 (3d Cir. 2010) (citing *Conneen*, 334 F.3d at 332); 29 C.F.R. § 1630.2(o)(3).

According to the complaint, the College failed to make *any* effort to engage in the interactive process, much less a "good faith" effort. *Taylor*, 184 F.3d 296, 319–20. Between the

Dickerman Letter and his termination, Johnson received no communication whatsoever from the College.  (*See generally* Compl.)  Johnson has therefore sufficiently alleged, at least for purposes of a 12(b)(6) analysis, that the circumstances surrounding his injury should have put the College on notice that it should "make appropriate inquiries about the possible need for an accommodation."  *Conneen*, 334 F.3d at 332.  Accordingly, Johnson has sufficiently plead a *prima facie* case of disability discrimination by virtue of the College's failure to engage in the interactive process.

### ADA Retaliation

In order to establish retaliation under the ADA, Johnson must show: (1) he was engaged in a protected activity; (2) he suffered from an adverse action by the employer either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the College's adverse action.  *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002).  Johnson's only allegation of protected activity is that he requested a brief extension of medical leave.  (Compl. ¶ 54.)  However, Johnson admits that his request for accommodation was made after his termination.  (*See* Compl. ¶¶ 37, 41.)  Johnson therefore fails to establish that he suffered from an adverse action *after* or *contemporaneous with* his request for accommodation.[3]  *Fogleman*, 283 F.3d at 567–68.  Accordingly, he fails to establish a *prima facie* case of retaliation under the ADA.

---

[3]     Johnson alternatively argues that the College refused to reinstate him in retaliation for requesting additional leave.  (Compl. ¶ 58.)  To establish that the College's refusal was an adverse action, Johnson must show that the decision would dissuade a reasonable person under the circumstances from requesting additional leave.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).  Johnson alleges that the College affirmed his termination in response to his request for accommodation by stating: "Your supervisors asked for the termination based on you not coming back to work and I concurred."  (Compl. ¶ 43.)  This allegation fails to show that the College affirmed Johnson's termination because he requested accommodation.  Rather, Johnson's allegation establishes that the College affirmed his termination because he did not show up to work after what it believed was the end of his FMLA leave.  Johnson fails to sufficiently allege any facts showing that the College's decision would dissuade a reasonable worker from requesting additional leave.  Accordingly, he fails to show that the College's refusal to reinstate him constituted an adverse action.

**IV.**

Count II of Johnson's complaint alleges claims for interference and retaliation under the FMLA.  Johnson contends that the College interfered with the exercise of his FMLA rights by: (1) terminating him before his leave ended; (2) failing to reinstate him to his position; and (3) failing to provide sufficient notice.  (Compl. ¶¶ 70–72.)  Johnson also alleges that the College terminated him in retaliation for taking FMLA leave.  (*Id.* ¶ 71.)  The FMLA "requires certain employers to provide their employees with up to twelve weeks of leave in the event that the employee has a serious medical condition." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 251 (3d Cir. 2014).  Additionally, "[a]n employer faces liability under the Act and its implementing regulations if it interferes with a right that the Act guarantees, or if it retaliates against an employee for invoking the Act's protections." *Id.*

<u>*FMLA Interference*</u>

To establish a claim for interference under the FMLA, Johnson must show: (1) he was an eligible employee under the FMLA; (2) the College was an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to the College of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under the FMLA.  *See Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005).  The parties only dispute whether the College denied Johnson benefits to which he was entitled under the FMLA.

*i.   Termination*

13

Johnson alleges that by terminating him before his leave ended, the College interfered with his right to receive twelve weeks of leave under the FMLA.  (Compl. ¶¶ 66, 71.)  The FMLA provides twelve weeks of leave for an employee who experiences a serious health condition that makes the employee unable to perform the functions of his job.  29 U.S.C. § 2612(a)(1)(D).  However, "if an employer terminates an employee during the twelve weeks but the employee would not have been able to return to work at the end of the twelve weeks in any event, the employer has not violated the FMLA."  *Katekovich v. Team Rent A Car of Pittsburgh, Inc.*, 36 F. App'x 688, 690 (3d Cir. 2002) (citing *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784–85 (6th Cir. 1998) (finding no cause of action where the employee "was clearly unable to return to work within the period provided by the FMLA")); *see also Donald v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, No. CIV.A. 13–0440, 2014 WL 3746520, at *3 (E.D. Pa. July 29, 2014); *Lombardo v. Air Products & Chemicals, Inc.*, No. CIV.A. 05–1120, 2006 WL 1892677, at *5 (E.D. Pa. July 7, 2006).

Johnson's complaint clearly shows that he was unable to return to work at the end of the twelve week leave period.  Although the exact end date of his leave is disputed, neither party contends that Johnson was entitled to leave after February 2014.  Johnson alleges that he was entitled to leave until at least February 4, 2014.  (Pl.'s Resp. at 5, ECF No. 7.)  The College similarly contends that it expected Johnson to return to work on February 4, which was exactly twelve weeks from the Dickerman Letter.  (Def.'s Mot. Dis. at 4.)  Alternatively, the Dickerman Letter stated that it was placing Johnson on FMLA Leave "*pending receipt of the Certification*" from his doctor.  (Compl. at Ex. A.) (emphasis added).  The Dickerman Letter could therefore be reasonably interpreted to state that Johnson's leave began on November 22, 2013—the date on

which the College received the Certification from Dr. Shirazi.  Even if Johnson's leave began on that date, his twelve weeks still would have expired on February 14, 2014.

Johnson's allegations make it clear that he was unable to return to work at any point in February 2014.  Johnson submitted a note from Dr. Shirazi on November 7, 2013 which advised that he was unable to perform work duties requiring him to walk or run and that further evaluation was needed before he could return to work.  (*Id*. ¶ 24.)  Additionally, Johnson alleges that his condition throughout his leave had deteriorated.  (*Id*. ¶ 35.)  Moreover, he contends that he required additional leave in order to undergo surgery on March 4 and to complete physical therapy.  (*Id*. ¶ 44.)  If Johnson could not work in November, he certainly could not work in February after his condition had deteriorated to the point where he required surgery, therapy and a period of additional leave.  Because Johnson was undisputedly unable to return to work upon the expiration of his FMLA leave, he cannot establish that his termination constituted interference under the FMLA.[4]

## ii.   *Failure to Reinstate*

Johnson also contends that the College interfered with his FMLA rights by failing to reinstate him to his position upon the expiration of the twelve week leave period.  The FMLA provides that upon expiration of FMLA leave, "the employee is entitled to be reinstated to his or her former position, or an equivalent one."  *Conoshenti*, 364 F.3d at 141 (referencing 29 U.S.C. § 2614(a)(1)).  However, an employee does not have a right to reinstatement if, at the conclusion of their leave, "the employee remains unable to perform an 'essential function' of the position."  *Budhun*, 765 F.3d at 254 (referencing 29 C.F.R. § 825.216(c)).

---

[4]      Had Johnson been able to return to work upon the expiration of his FMLA leave, his termination during the leave period could constitute interference.  *See, e.g.*, *Budhun*, 765 F.3d 252–56 (finding that an employer's decision to fire its employee eight days before her leave ended when there was evidence she could have returned to work constituted interference under the FMLA).

Johnson's interference claim based on the College's failure to reinstate him fails for the same reason as his interference claim based on his termination—he was unable to return to work and perform his duties.  On November 7, 2013 Dr. Shirazi provided that Johnson was unable to perform work duties requiring him to walk or run and that further evaluation was needed before he could return to work.  (Compl. ¶ 24.)  His condition deteriorated to the point where he required surgery and physical therapy.  (*Id.* ¶¶ 35, 44.)  Based on his own allegations, Johnson was unable to perform the essential functions of the job at the time his leave ended.  Thus, Johnson's claim for interference based on the College's failure to reinstate him fails.

iii.     *Failure to Provide Adequate Notice*

Johnson finally alleges that the College interfered with his FMLA rights by failing to comply with the Department of Labor's ("DOL") notice regulations.  An employer may be held liable for interference under the FMLA for failing to provide proper notice in accordance with the DOL's regulations.  29 C.F.R. § 825.300(e).  The notice requirements are meant to "ensure that employers allow their employees to make informed decisions about leave." *Conoshenti*, 364 F.3d at 144.  However, in order to successfully state a claim of interference based on the employer's noncompliance with the FMLA's notice requirements, an employee must show that they have suffered prejudice.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002).  "Prejudice occurs when the employer's failure to advise the plaintiff of his FMLA rights 'rendered him unable to exercise [the right to leave] in a meaningful way, thereby causing injury.'" *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d at 318–19 (3d Cir. 2014) (citing *Conoshenti*, 364 F.3d at 143).

An employer must first provide an employee notice that their leave will be designated as FMLA leave.  29 C.F.R. § 825.300(d)(1).  The employer must also notify the employee of the

specific amount of leave that will be counted against the employee's FMLA leave entitlement.

29 C.F.R. § 825.300(d)(6).  Additionally, the employer must detail "the specific expectations and

obligations of the employee and explain[] any consequences of a failure to meet these

obligations."  29 C.F.R. § 825.300(c)(1).  These expectations and obligations include, in relevant

part:

> (i) That the leave may be designated and counted against the employee's annual
> FMLA leave entitlement if qualifying and the applicable 12–month period for
> FMLA entitlement;
> (iii) The employee's right to substitute paid leave, whether the employer will require the
> substitution of paid leave, the conditions related to any substitution, and the employee's
> entitlement to take unpaid FMLA leave if the employee does not meet the conditions for
> paid leave; [and]
> (vi) The employee's rights to maintenance of benefits during the FMLA leave and
> restoration to the same or an equivalent job upon return from FMLA leave.

29 C.F.R. § 825.300(c)(1) (internal citations omitted).  The College argues that the Dickerman

Letter satisfied both the designation notice requirements under 29 C.F.R. § 825.300(d), and the

individualized expectation and obligation requirements under 29 C.F.R. § 825.300(c).

The Dickerman Letter was legally insufficient.  The Letter was ambiguous about when

Johnson's FMLA leave would begin and end.  While it did note that Johnson was entitled to

twelve weeks of FMLA leave, it also stated that the College was placing him on leave pending

receipt of the Certification from his doctor.  (Compl. at Ex. A.)  The Dickerman Letter could

reasonably be interpreted as initiating leave on November 12 when it was sent, or November 22

when Johnson's Certification was received.  Additionally, the Certification stated that "[i]f

requested by [the employee's] employer, the [employee's] response is required to obtain *or*

retain the benefit of FMLA protections."  (Def.'s Mot. Dis. at Ex. 1.) (emphasis added).  The

Certification was therefore also ambiguous regarding whether Johnson was beginning or

continuing his leave by returning the completed Certification.

The Dickerman Letter also stated that "you have enough sick time to cover you through 12 full weeks." (Compl. at Ex. A.)  Presumably this was the College's way of telling Johnson that he could substitute accrued paid leave during the FMLA period in accordance with the DOL's regulations.  However, the Dickerman Letter did not state whether the College required Johnson to substitute that paid leave, or what the conditions were relating to any substitution. *See* 29 C.F.R. § 825.300(c)(1)(iii).  Most significantly, the Dickerman Letter was completely silent as to: (1) his right to maintain health benefits; (2) the possibility of termination if he failed to return after twelve weeks; and (3) his right to reinstatement after the leave period ended.  *See* 29 C.F.R. § 825.300(c)(1)(vi).  Moreover, the DOL Form that the College attached to the letter specifically stated that if employees are eligible for FMLA leave, "the notice . . . must specify the employee's rights and responsibilities." (Def. Mot. Dis. at Ex. 1.)  The Dickerman Letter did not provide Johnson with sufficient notice such that he could "make informed decisions about [his] leave." *Conoshenti*, 364 F.3d at 144.

Although Johnson has adequately pled that the College failed to provide sufficient notice, he must still allege that he suffered from some resulting prejudice.  To do this, Johnson must show that the lack of notice "'rendered him unable to exercise [the right to leave] in a meaningful way, thereby causing injury.'" *Lupyan*, 761 F.3d at 318–19 (citing *Conoshenti*, 364 F.3d at 143).  Johnson must demonstrate that "had [he] been properly informed of [his] FMLA rights, [he] could have structured [his] leave differently." *Id*. at 323.  Indeed, the purpose of the DOL's regulations is to ensure that employers allow their employees to make informed decisions about leave. *See Palan v. Inovio Pharm., Inc.*, No. CIV.A. 14–5054, 2015 WL 746087, at *3 (E.D. Pa. Feb. 20, 2015) (citing *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 386 (D.N.J. 2001)).

Johnson has sufficiently alleged that he suffered from prejudice as a result of the College's failure to provide adequate notice.  Johnson contends that he had no idea when his FMLA leave would terminate.  (Pl.'s Resp. at 7.)  Additionally, he was unaware that he could be terminated if he failed to return to work at the end of the twelve weeks.  (*Id.*)  Johnson rightly points out that the Dickerman Letter merely provides that if Johnson could not return after twelve weeks, Dickerman would send him the College's long-term disability policy.  (*Id.* at 7–8; *see also* Compl. at Ex. A.)  Thus, a reasonable interpretation of the Letter indicates that the only consequence of failing to return to work would be that the College would send information on the long-term disability policy.  For purposes of a 12(b)(6) analysis, Johnson has sufficiently alleged that the lack of notice "rendered him unable to exercise [the right to leave] in a meaningful way.'"  *See Lupyan*, 761 F.3d at 318–19 (citing *Conoshenti*, 364 F.3d at 143).

### *FMLA Retaliation*[5]

Johnson also alleges that he was terminated in retaliation for requesting and taking FMLA leave.  The FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).  An employer violates the FMLA if it "use[s] the taking of FMLA leave as a negative factor in employment actions." *Budhun*, 765 F.3d at 258 (quoting 29 C.F.R. § 825.220(c)).

To state a valid cause of action for retaliation under the FMLA, Johnson must show: (1) he is protected under the FMLA; (2) he suffered an adverse employment action, and (3) the adverse action was causally related to his exercise of FMLA rights.  *Hepner v. Thomas Jefferson Univ. Hosps., Inc.*, No. CIV.A. 12–5443, 2013 WL 2334148, at *5 (E.D. Pa. May 29, 2013); *see*

---

[5]     The parties do not address Johnson's FMLA retaliation claim in their briefs.  However, Johnson alleges that the College "violated the FMLA by terminating [him] while he was on protected leave and in retaliation for taking and requesting FMLA leave."  (Compl. ¶ 71.)

*also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).  "An adverse employment action is an action that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  *Budhun*, 765 F.3d at 257 (internal quotations and citations omitted).  Termination is an example of an adverse employment action.  *Id*. at 257–258.

Whether a causal link exists between the exercise of FMLA rights and the adverse action "must be considered with a careful eye to the specific facts and circumstances encountered."  *Id*. at 258 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir.2000)).  To establish causation, Johnson must show either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id*. at 259 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007)).

The parties do not dispute that Johnson was protected by the FMLA, or that his termination constitutes an adverse action.  Therefore, the only issue regarding Johnson's retaliation claim is whether there is a causal link between his exercise of FMLA rights and his termination.  In *Budhun*, the Third Circuit found that the temporal proximity between the plaintiff's FMLA leave and the employer's decision to replace her supported a retaliation claim.  *Budhun*, 765 F.3d at 258–59.  The plaintiff in *Budhun* was approved for leave through September 23, 2010.  *Id*. at 249.  On September 15, 2010, the employer made the decision to replace the plaintiff if she did not return from leave on September 23.  *Id*.  When the plaintiff failed to return, the employer filled her position two days later, but did not officially terminate her until November 10, 2010.  *Id*.  The employer moved to dismiss the plaintiff's retaliation claim on the

ground that she could not establish a causal link between her taking of FMLA leave and her termination. *Id.* The court held that because the employer decided to replace her days before her leave had ended, the temporal proximity of her taking of leave and her replacement was unusually suggestive. *Id.* at 258 (referencing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that an employee who was notified of her termination the day she was scheduled to return to work was sufficient to establish a causal connection)).

The reasoning in *Budhun* applies to the circumstances surrounding Johnson's termination. In *Budhun*, the plaintiff was terminated after her leave ended, but that termination was effective eight days prior to the end of the leave. Here, Johnson has alleged that although he was not actually terminated until February 10, the decision to fire him was made on February 1, 2014, before his FMLA leave ended. (Compl. ¶ 37.) As in *Budhun*, the timing of Johnson's termination is unusually suggestive because it allegedly occurred days before his leave expired. Johnson has sufficiently alleged a causal link between his taking of FMLA leave and his termination, and therefore sufficiently pleads a claim for retaliation under the FMLA.

BY THE COURT

*/s/Gerald J. Pappert*
GERALD J. PAPPERT, J